UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JERMAINE CARSON,<br>          Plaintiff,<br><br>     v.<br><br>TIMOTHY TUCKER, and WESTERN<br>EXPRESS, INC.,<br>          Defendants. | :<br>:<br>:<br>:<br>:   No. 5:20-cv-00399<br>:<br>:<br>:<br>:<br>: |

**O P I N I O N**
**Defendants' Partial Motion to Dismiss and Motion to Strike, ECF No. 22 — Granted**

**Joseph F. Leeson, Jr.**                                                                              **July 16, 2020**
**United States District Judge**

### I.     INTRODUCTION

Plaintiff Jermaine Carson brings forth this amended complaint against Defendants Timothy Tucker and Western Express for alleged injuries sustained in a tractor-trailer accident. The Court previously partially dismissed Carson's complaint. Carson's amended complaint similarly asserts claims of negligence and punitive damages against Defendants. Defendants move to dismiss the claims of punitive damages, and move to strike mention of "gross," "wanton," and "reckless" throughout the complaint where Carson cannot factually justify those terms. For the following reasons, the motions are granted.

### II.    BACKGROUND

Carson was operating his 2004 Mitsubishi tractor in Ephrata Borough on December 28, 2017, when Tucker, operating his 2016 Freightliner owned by Western Express, came into "sudden and forcible" contact with Carson's tractor trailer from the rear on State Route 222. Pl.'s

Am. Compl. ¶¶ 9, 10, 11, 13, 14, ECF No. 21. The impact of the collision forced Carson's tractor-trailer off the road, causing it to flip on its side and throw Carson about inside the vehicle. *Id*. at ¶¶ 15, 16.

As a result of the collision, Carson suffered knee injuries, back injuries, and spinal injuries that led to surgery as well as damage to his nervous system. *Id*. at ¶ 24. Due to these injuries, Carson sought medical treatment and will likely need treatment in the future. *Id*. at ¶ 25. Additionally, Carson needed to expend money for his healthcare and will need to expend additional sums in the future for further treatment. *Id*. at ¶ 26. Carson also asserts that he lost income, earning capacity, is unable to go about his usual daily routines, and has been "forced to forego the pleasures of life." *Id*. at ¶¶ 27, 28, 29.

Carson originally filed his complaint against Defendants on December 20, 2019. *See* Pl. Compl., ECF No. 1. The case was subsequently transferred to this Court from the Middle District of Pennsylvania on January 24, 2019. *See* Order, ECF No. 10.

Defendants previously filed a motion to dismiss Carson's punitive damage claims, a motion for a more definitive statement of specific paragraphs in Carson's complaint, and a motion to strike all references to punitive damages on February 18, 2020. *See* Defs.' Mot. to Dismiss, ECF No. 13. Carson responded with an opposition to the motions on March 3, 2020, to which Defendants filed a response in support of the motions on March 9, 2020. *See* Pl.'s Resp., ECF No. 14; Defs.' Reply Br., ECF No. 16. This Court granted Defendants' motions without prejudice on April 23, 2020 to give Carson the ability to amend the complaint and provide additional facts to support his claims. *See* Opinion, ECF No. 19. Carson filed an amended complaint on May 26, 2020. *See* Pl.'s Am. Compl.

Defendants filed this motion to dismiss and motion to strike on June 8, 2020. Defs.' Mot. to Dismiss, ECF No. 22. The matter is now ready for review.

## III.    LEGAL STANDARDS

### A.    12(b)(6) Motion to Dismiss Standard

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.    12(f) Motion to Strike Standard

Defendants seek to dismiss "gross," "wanton," and "reckless" throughout the complaint where Carson cannot factually justify those terms. However, that request is more properly viewed as a motion to strike under Rule 12(f) rather than a motion to dismiss under Rule

12(b)(6), and the Court treats it accordingly. *Fisher v. Borough of Doylestown*, No. 02–4007, 2003 WL 22134790, at *5 n.5 (E.D. Pa. May 30, 2003); *see Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 05–897, 2006 WL 2583275, at *2 (D.N.J. Sep. 5, 2006) (concluding that a court should not deny an otherwise proper motion merely because a party has styled it inaccurately).

A district court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Content is immaterial when it has no essential or important relationship to the claim for relief. Content is impertinent when it does not pertain to the issues raised in the complaint. Scandalous material improperly casts a derogatory light on someone, most typically on a party to the action." *Lee v. Eddystone Fire & Ambulance*, No. 19-3295, 2019 WL 6038535, at *2 (E.D. Pa. Nov. 13, 2019) (quotation omitted). "[S]triking a pleading or a portion of a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice.'" *Lee v. Dubose Nat'l Energy Servs., Inc.*, No. 18-2504, 2019 WL 1897164, at *4 (E.D. Pa. Apr. 29, 2019) (same). Thus, "[m]otions to strike are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Eddystone Fire*, 2019 WL 6038535 at *3; *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 527–28 (E.D. Pa. 2013).

C.  **Punitive Damages Standard in Tort Cases**

Pennsylvania law sets an exacting standard for the award of punitive damages in tort cases. Pennsylvania law has adopted Section 908 of the Restatement (Second) of Torts, which provides that punitive damages may be "awarded to punish a defendant for outrageous conduct, which is defined as an act which, in addition to creating 'actual damages, also imports insult or

outrage, and is committed with a view to oppress or is done in contempt of plaintiff's rights.'" *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 235 (3d Cir. 1997) (quoting *Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243, 1263 (Pa. Super. Ct. 1983)). This includes conduct which is "malicious, wanton, reckless, willful, or oppressive." *Feld v. Merriam*, 485 A.2d 742, 747-48 (Pa. 1984) (internal quotations omitted).

The Supreme Court of Pennsylvania has "stressed that, when assessing the propriety of the imposition of punitive damages, '[t]he state of mind of the actor is vital.'" *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770-771 (Pa. 2005) (citing *Feld*, 485 A.2d at 748). Specifically, the defendant must have either intent, or an "evil motive," or "reckless indifference to the rights of others." *Id.* at 747 (citing *Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963)). For reckless indifference in particular, a punitive damages claim "must be supported by evidence sufficient to establish that: (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that: (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison*, 870 A.2d at 771. In other words, a defendant must have "sufficient notice" of the risk that was disregarded. *Achey v. Crete Carrier Corp.*, No. 07-cv-3592, 2009 WL 9083282 (E.D. Pa. Mar. 30, 2009) (finding defendant's minor accidents in the past and sleep apnea did not provide 'sufficient notice' to defendant and his employer that defendant had a predisposition to fall asleep at the wheel).

Punitive damages in Pennsylvania have only been awarded in limited circumstances since punitive damages are considered to be an "extreme remedy," available in "only the most exceptional matters." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005). Particularly, "Pennsylvania law requires 'something more' than negligence" to warrant punitive damages.

5
071520

*Babenko v. Dillon*, No. 5:19-cv-00199, 2019 WL 3548833, *3 (E.D. Pa. Aug. 5, 2019) (quoting *Elmi v. Kornilenko*, No. 17-cv-177, 2018 WL 1157996 (W.D. Pa. Mar. 2, 2018)).

### D. Punitive Damages Standard – Employers and Vicarious Liability

Pennsylvania courts recognize that an employer "may be held vicariously liable for punitive damages if the actions of its [employee]: (1) were clearly outrageous, (2) were committed during and within the scope of the agent's duties, and (3) were done with the intent to further the principal's interests." *Achey*, 2009 WL 9083282, at *10 (citing *Loughman v. Consol-Pa. Coal Co.*, 6 F.3d 88, 101 (3d Cir. 1993). Though punitive damages may be imposed for vicarious liability even if the employer did not direct or approve the acts by the employees, . *Lucchesi v. Johnson*, No. 15-6114, 2015 WL 9308334, at *3 (E.D. Pa. Dec. 22, 2015) (citing *Shiner v. Moriarty*, 706 A.2d 1243, 1264 (Pa. Super. Ct. 1983)), courts use "great caution" in applying punitive damages if the employer did not know or authorize the employee's tortious conduct, *Achey*, 2009 WL 9083282, at *10 (citing *Funk v. Kerbaugh*, 70 A. 953, 954 (Pa. 1908)). In doing this, courts place great emphasis on ensuring that the employee's conduct complained of is "clearly outrageous to justify vicarious imposition of exemplary damages" on the employer. *Id.* (citing *Skeels v. Universal C.I.T. Credit Corp.*, 335 F.2d 846, 852 (3d Cir. 1964)). To warrant imposing punitive damages for vicarious liability, the employer must have a "conscious appreciation" or "sufficient notice" that their employee would perform the tortious conduct. *Felkner*, 2014 WL 1013474, at *7; *Achey*, 2009 WL 9083282, at *6.

### IV. ANALYSIS

#### A. Motion to Dismiss Punitive Damages Claims against Tucker

Defendants seek to dismiss the punitive damages claims against them on the basis Carson did not plead sufficient facts to show Tucker's state of mind during the accident.

The Eastern District of Pennsylvania has found circumstances to be "something more" than negligence, warranting punitive damages, in a variety of matters. For instance, the court has found reckless indifference warranting punitive damages in the cases of a defendant driving too closely to cars in front of him while operating a tanker truck loaded with chemicals as well as a defendant with a history of frequently violating the fourteen-hour federal driving limitations causing a collision while being inattentive to traffic conditions. *Lucchesi*, 2015 WL 9308334, at *3 ("[A] jury could find that [the defendant] consciously appreciated and ignored the risks associated with his driving of a Tanker Truck"); *see Gonzalez v. Seashore Fruit & Produce*, No. 19-1422, 2020 WL 2571101, at *2 (E.D. Pa. 2020) (holding that defendant's violation of the fourteen-hour driving limit seventy-six times in the preceding eleven months before the accident is a conscious disregard of risk). Comparably, a defendant entering an intersection after the light had been red for at least eight seconds while blowing his horn three times is considered an intentional disregard of a substantial risk. *See Felkner v. Werner Enterprises, Inc.*, No. 13-2189, 2014 WL 1013474, at *2, 7 (E.D. Pa. Mar. 14, 2014). Further, a conscious decision to continue driving despite poor sleep the night before and extensive awareness of the dangers of operating a truck without proper rest is intentional enough to permit punitive damages. *Achey*, 2009 WL 9083282, at *9.

In contrast, simple allegations limited only to a defendant failing to comply with traffic law are not sufficient for punitive damages. *Babenko*, 2019 WL 3548833, at *3 (holding that defendant's negligent speeding, failure to properly signal, and failure to properly observe roadways does not warrant punitive damages); *see also Elmi*, 2018 WL 1157996, at *5 (finding that imposing punitive damages on a defendant for passing another vehicle at seventy miles per hour contradicts the policy of limiting punitive damages to "outrageous" cases).

Here, even in construing the amended complaint in a light most favorable to Carson, Carson did not plead sufficient facts to show that Tucker's actions were outrageous enough to warrant punitive damages. Carson's claims are conclusory and do not satisfy the requirement needing something more than mere negligence for excess damages.

In this Court's initial opinion granting Defendants' motion to dismiss the punitive damage claims without prejudice, the Court explained that Carson's complaint gave conclusory statements without factual allegations. The Court even cited specific examples in which Carson failed to plead the facts. *See* Opinion. For example, the Court stated, "Carson alleges that Tucker operated his vehicle in excess of the applicable hours, but offers no details about the number of hours Tucker had driven.*" Id.* The Court also referenced the seemingly contradictory statements in which Carson claims that Tucker fell asleep while driving, but also caused the collision as a result of his cell phone usage. *See id.* Here, in the amended complaint, Carson did not plead the facts any differently. In fact, Carson's allegations still lack factual specificity and do not address the Court's specific concerns such as the number of hours Tucker had driven or the contradictory phrasing about the cause of the collision. Pl.'s Am. Compl. ¶¶ 32(ee), 32(n).

Carson's claims against Tucker also does not meet the threshold for Pennsylvania's punitive damages since the current matter does not have "something more" than negligence, *Babenko*, 2019 WL 3548833, at *3, that warrants an "extreme remedy," *Phillips*, 515 F.3d at 233. Particularly, Carson's complaint does not sufficiently illustrate that Tucker had the necessary mental state of either intent or reckless indifference to justify punitive damages. Unlike *Lucchesi* where there was a heightened risk of spilling dangerous chemicals during a collision, *see Lucchesi*, 2015 WL 9308334, there were no factors in the present case that suggested driving above the speed limit would be an outrageous disregard of other's rights above

simple negligence. Tucker was operating a tractor-trailer, but was not carrying any dangerous materials that heightened the risk. Also, Carson's allegations do not suggest that Tucker was recklessly indifferent to other's rights the way the defendant in *Gonzalez* was, *Gonzalez*, 2020 WL 2571101, at *2, since Carson did not specify the number of hours Tucker drove in violation of the federal regulations limiting the number of hours drivers could travel. Carson also did not plead any facts that suggest Tucker's traffic violation was intentional, as was the case in *Felkner*, when the defendant honked his horn three times to warn motorists that he was entering the intersection after the light had been red for a significant amount of time, *see Felkner*, 2014 WL 1013474, at *2, 7.

Instead, the present case more closely resembles the allegations in *Babenko* and *Elmi* where the defendants simply failed to comply with traffic laws — infractions that do not support a claim for punitive damages. In fact, the majority of Carson's claims are regarding Tucker's traffic violations such as failing to warn other vehicles about his rapid approach, failure to drive within a single lane, speeding, and failing to properly brake. Pl.'s Am. Compl. ¶ 32. Thus, similar to the court's finding in *Elmi*, imposing punitive damages against Tucker in the present case would contradict the policy of limiting excess damages to extreme or outrageous cases. *Elmi*, 2018 WL 1157996, at *5.

Thus, Defendants' motion to dismiss the punitive damages claims against Tucker is granted and dismissed with prejudice as Carson had a prior opportunity to amend his complaint.

### B. Motion to Dismiss Punitive Damages Claims against Western Express

Next, Defendants move to dismiss the punitive damages claims against Western Express for failing to factually plead the proper punitive damages framework for employers to be held liable for the actions of their employees.

Courts have held employers liable for punitive damages for the actions of their employees in a limited set of circumstances. For instance, a medical condition with symptoms making the driver likely to crash or a history of safety violations leading to the same type of collision that occurred is sufficient to put the employer on notice. *See generally Achey*, 2009 WL 9083282; *Gonzalez*, 2020 WL 2571101. However, despite an employer's awareness of a driver's medical condition, punitive damages may not be justified if the employer performed extensive medical examinations for commercial driver fitness that found defendant fit to operate a vehicle despite his condition. *Achey*, 2009 WL 9083282, at *5 (finding that an employer's awareness of a driver's sleep apnea does not justify punitive damages when the driver fell asleep behind the wheel and caused a collision because the employer performed numerous medical examinations).

Additionally, for a past accident to serve as a basis for punitive damages against an employer, there must be a nexus between the prior incident and the conduct leading to the accident. *Felkner*, 2014 WL 1013474, at *6 (citing *Achey*, 2009 WL 9083282, at *5). In other words, the prior incident must be reasonably related or the same as the conduct leading to the current accident. *See id.* For example, a driver violating the fourteen-hour driving regulations created to prevent fatigue and inattentiveness at least seventy-six times in a span of eleven months has a nexus with an accident caused by the same driver as a result of his inattentiveness to traffic conditions. *Gonzalez*, 2020 WL 2571101, at *2. However, a nexus does not exist if a driver has previous incidents of a speeding ticket, logbook deficiencies, and safety violations, but the conduct that caused the accident is falling asleep at the wheel. *See Felkner*, 2014 WL 1013474, at *6 (citing *Achey*, 2009 WL 9083282, at *7).

Here, Carson failed to sufficiently plead the allegations in support of a punitive damages claim against Western Express. Similar to the punitive damage claims against Tucker Carson's

claims against Western Express are a laundry list of conclusory allegations. These include allegations such as failing to adequately instruct Tucker on the safe operation of the tractor-trailer, negligently entrusting him with the vehicle, and failing to adequately train and oversee the employees in operating the tractor-trailer. Pl.'s Am. Compl. ¶ 43. As discussed above, conclusory allegations are insufficient to state a claim for punitive damages against Tucker and thus, are insufficient in the claim against Western Express for the same reasons.

Additionally, in reviewing the requirements under *Loughman* — that the employee actions were: (1) clearly outrageous, (2) committed during the scope of the employee's duties, and (3) done with the intent to further the employer's interests, 6 F.3d at 101, — even though the collision occurred while Tucker was performing his duty of transporting goods for Western Express, as discussed above, Tucker's conduct was not "clearly outrageous" in a way that justifies punitive damages. Carson's amended complaint does not reference Western Express having any knowledge about Tucker that would give them any sort of notice that he was not fit to operate a tractor-trailer. Particularly, unlike *Gonzalez* where the employers were aware that their employee had violated the driving regulations on dozens of occasions, *Gonzalez*, 2020 WL 2571101, Carson's allegations do not indicate that Tucker had ever violated the driving regulations. *See generally* Pl.'s Am. Compl. ¶¶ 32, 42. The allegations also do not mention any previous incidents that may put Tucker's driving capabilities in question such as a known medical condition or previous accidents and safety violations with a nexus to the current incident. *See generally id.*

Accordingly, Defendants' motion to dismiss the punitive damages claims against Western Express is granted and dismissed with prejudice as Carson had a prior opportunity to amend his complaint.

### C. Defendants' Motion to Strike

Through their 12(f) motion, Defendants seek to strike the allegations mentioning "gross," "wanton," and "reckless" conduct in the amended complaint. Due to the reasons discussed above, punitive language is stricken from the amended complaint.

Specifically, because the terms Defendants seek to strike are limited to punitive damages, once the Court dismisses the punitive damage claims, these terms become immaterial and have "no essential or important relationship to the claim for relief." *Eddystone Fire*, 2019 WL 6038535, at *2. Accordingly, the Defendants' motion to strike is granted.

### V.  Conclusion

For the reasons stated above, Defendants' partial motion to dismiss is granted. Carson's punitive damages claims against Defendants are dismissed with prejudice as Carson had a prior opportunity to amend his complaint. Additionally, Defendants' motion to strike the terms "gross," "wanton," and "reckless" throughout the complaint is granted.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge