UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JERMAINE CARSON,
    Plaintiff,

    v.

TIMOTHY TUCKER and WESTERN,
EXPRESS INC.,
    Defendants.

:
:
:
:
:
:
:
:
:

No. 5:20-cv-00399

**O P I N I O N**
**Motion for Summary Judgment, ECF No. 51 -- Granted**

**Joseph F. Leeson, Jr.**                                                                         **March 30, 2021**
**United States District Judge**

### I. INTRODUCTION

The above-captioned action arises out of a truck collision between the Plaintiff, Jermaine Carson, and Defendant, Timothy Tucker. At the time of the collision, Tucker was employed by Defendant Western Express, Inc. Following the close of fact discovery, Defendants filed the present partial Motion for Summary Judgment. Therein, Defendants seek dismissal of Carson's direct liability claim against Western Express, alleged as part of Count III in Caron's Amended Complaint.

Following review of the undisputed facts, there is no genuine dispute of material fact as to the direct liability claim against Western Express. Additionally, on those undisputed facts, Carson's direct liability claim against Western Express fails as matter of law. Accordingly, Defendants' partial Motion for Summary Judgment is granted.

## II.   PROCEDURAL HISTORY

Carson filed his first Complaint on December 20, 2019 in the Federal District Court for the Middle District of Pennsylvania, alleging four Counts:

(I)  Negligence against Tucker

(II)  Punitive Damages against Tucker

(III)  Negligence against Western Express

(IV)  Punitive Damages against Western Express

Following an Order directing Carson to show cause why the case should not be transferred to the Eastern District of Pennsylvania, the case was transferred from the Middle District to this Court.  Thereafter, Defendants filed their first partial motion to dismiss and motion to strike the punitive damages request of the Complaint.  This Court granted the motion to dismiss, dismissing Carson's claims for punitive damages, Counts II and IV of the Complaint, without prejudice.  This Court also granted the motion to strike, striking the punitive damages request from the Complaint.  Following this Court's Order, on May 26, 2020, Carson filed an Amended Complaint.  Defendants again moved to dismiss the punitive damages claims and strike the request for punitive damages.  In an Order on July 16, 2020, this Court granted that motion, dismissing the punitive damages claims, Counts II and IV, with prejudice and striking the punitive damages request from the Complaint.  Accordingly, only Carson's claims for negligence, Counts I and III of the Complaint, remain in the case.

Now before this Court is Defendants' partial Motion for Summary Judgment.  Therein, Defendants ask this Court to grant judgment in their favor on part of Count III.  Count III, the negligence claim against Western Express, includes both vicarious liability and direct liability

claims. Defendants ask this Court to enter judgment in their favor on only the direct liability claim of Count III. Carson opposes the motion, asserting the direct liability claim should remain.

### III. UNDISPUTED MATERIAL FACTS

On December 28, 2017, Carson and Tucker were involved in a motor vehicle collision on Route 222 in Lancaster County, Pennsylvania. *See* Pl.'s Resp. to Stmt. of Facts ¶ 4 ("Pl.'s Resp. SF"). Carson was operating a 2004 Mitsubishi tractor, and Tucker was operating a 2016 Freightliner. *See* Am. Compl. ¶¶ 9-10, ECF No. 21; Answer to Am. Compl. ¶¶ 9-10, ECF No. 27. At the time of the collision, Tucker was employed as a tractor trailer driver for Western Express. *See* Pl.'s Resp. SF ¶ 5. Furthermore, at the time of the collision, "Tucker was acting within the course and scope of his employment with Western Express." *See* Pl.'s Resp. SF ¶ 6. Following the collision, Tucker was charged with and plead guilty to failing to drive his vehicle at a safe speed. *See* Am. Compl. ¶¶ 19-20; Answer to Am. Compl. ¶¶ 19-20. Carson claims that he sustained injuries from the collision, and he seeks a variety of damages as a result. *See* Pl.'s Resp. SF ¶ 8.

### IV. LEGAL STANDARDS

#### A. Review of Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *See* FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  The court must consider the evidence in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

B.  **Law Governing Claims of Direct Negligence against a Corporation**

In addition to vicarious liability for the actions of its employees, a corporation may also be subject to direct liability for negligent entrustment, instruction, supervision, monitoring, and hiring of its employees.  *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487-89 (3d Cir. 2013).  Notwithstanding, "courts have dismissed claims for negligent supervision and negligent hiring when a supervisor defendant concede[s] an agency relationship with the co-defendant." *See Calhoun v. Van Loon*, No. 3:12-cv-458, 2014 WL 3428876, at *4 (M.D. Pa. July 11, 2014) (quoting *Fortunado v. May*, Civ. A. No. 04-1140, 2009 WL 703393, at *5 (W.D. Pa. Mar. 16, 2009)).  The lone exception to this general rule permits a direct liability claim to proceed against an employer who has admitted agency "when a plaintiff has a valid claim for punitive damages."

*See id.* (quoting *Sterner v. Titus Transp., LP*, No. 3:cv-10-2027, 2013 WL 6506591, at *3 (M.D. Pa. Dec. 12, 2013). Accordingly,

> federal district courts in Pennsylvania have nearly unanimously declined to permit[] "claims for negligent entrustment, supervision, monitoring, and hiring to proceed when (1) the supervisor/employer defendant admits that its employee was acting in the scope of his or her employment at the time of the accident, *and* (2) the plaintiff does not have a viable claim for punitive damages against the supervisor/employer defendant."

*See Calhoun*, 2014 WL 3428876, at *4 (quoting *Sterner*, 2013 WL 6506591, at *3 (collecting cases)).

V.   **DISCUSSION**

    A.   **Review of Carson's Direct Liability Claim**

Under the standard that is nearly universally adopted by federal district courts applying Pennsylvania law, Carson's direct liability claim against Western Express cannot survive if Western Express has admitted agency over Tucker and Carson does not have a viable claim for punitive damages. Based on the undisputed facts stated above, Western Express has admitted agency over Tucker, and Carson does not have a viable claim for punitive damages. Thus, Carson's claim of direct liability against Western Express fails as a matter of law, and Western Express is entitled to judgment as a matter of law on that claim.

The first material fact is the agency relationship between Western Express and Tucker. A review of the Amended Complaint and Answer shows that there is no genuine dispute as to this material fact. Western Express admits agency over Tucker. In its Answer to Carson's Amended Complaint, Western Express stated, in no uncertain terms, "Defendants admit that Timothy Tucker was an employee of Western Express, Inc. and that Timothy Tucker was acting within the course and scope of his employment at the time of the subject accident." *See* Answer to Am. Compl. ¶ 5. Carson indicates that he does not dispute this fact. *See* Pl.'s Resp. SF ¶ 6.

Accordingly, there is no genuine dispute over the material fact of agency, and it is established that Tucker was acting within the scope of his employment with Western Express at the time of the collision.

The second material fact is the existence of a viable punitive damages claim. A review of the docket and this Court's Orders shows that there is no genuine dispute over this material fact. In an Opinion and Order issued on July 16, 2020, this Court dismissed Carson's punitive damages claims with prejudice. *See* Order 07/16/20, ECF No. 26. On March 15, 2021, Carson filed a Motion for Reconsideration of that very Order. *See* Mot. Recon., ECF No. 60. In an Order and Opinion dated March 17, 2021, this Court dismissed the Motion for Reconsideration, finding it untimely filed. *See* Opinion 03/17/21, ECF No. 63; Order 03/17/21, ECF No. 64. Accordingly, Carson does not have any viable claim for punitive damages against Western Express or Tucker.

There is no genuine dispute of material fact with respect to the direct liability claims against Western Express. Western Express has admitted agency over Tucker, and Carson does not have a viable punitive damages claim. Under these circumstances, the overwhelming guidance among the federal district courts reviewing Pennsylvania law is to dispose of the direct liability claim. Accordingly, Western Express is entitled to judgment as a matter of law on Carson's direct liability claim.

**B.     Review of Carson's Arguments in Opposition to the Motion**

In his opposition to Defendants' motion, Carson points to case law that he suggests permits his direct liability claim against Western Express to go forward despite the undisputed facts noted above. Carson asserts arguments under both Pennsylvania case law and case law

from the federal district courts applying Pennsylvania law. Neither argument warrants an outcome different from that reached above under the appropriate standard.

### 1. Arguments based on Pennsylvania Case Law

Carson argues that the Pennsylvania Supreme Court case of *Scampone v. Highland Park Care Center, LLC* requires this Court to sustain his claim of direct liability against Western Express. *See* Resp. 25 (citing 57 A.3d 582, 597 (Pa. 2012)). It is certainly true that a federal district court sitting in diversity must apply the principles of *Erie* in determining which state's substantive law to apply to the case before it. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, Pennsylvania law applies to the instant matter, as the collision at issue occurred in Pennsylvania.

Although a Pennsylvania Supreme Court decision would ordinarily serve as a guidepost to the interpretation of Pennsylvania law, *Scampone* does not answer the question at issue in this case. *Scampone* did not address whether a direct liability claim should be permitted to proceed where the defendant-supervisor admits agency and the plaintiff has no viable punitive damages claim. Rather, *Scampone* dealt with a very different question: "Whether the Superior Court erred in applying the corporate negligence theory . . . to a skilled nursing facility and the healthcare company responsible for its operations?" *See Scampone*, 57 A.3d at 586. Accordingly, the analysis in *Scampone* centers on whether a certain category of employers should be exempted from direct liability altogether, an entirely different question than that at issue in the present matter. *See id.* at 596.

Moreover, *Scampone* did not address factual circumstances similar to those presented here, and for good reason. The plaintiff in *Scampone* offered enough evidence on its punitive damages claims to warrant submitting the claim to a jury. *See id.* at 586. Here, this Court has

already determined that Carson does not have a viable punitive damages claim. Thus, because *Scampone* addressed a completely different question of law from that presented here and because *Scampone* involved different factual circumstances, any insistence that the case requires this Court to sustain Carson's direct liability claim is unavailing.

In a second effort, Carson recognizes that Pennsylvania does permits direct liability claims. *See* Resp. 28. While Carson is correct that Pennsylvania recognizes direct liability claims, this assertion does little to support sustaining his particular claim. That Pennsylvania generally recognizes direct liability claims does not mean that all such claims will go forward regardless of the circumstances. The cases relied upon above from the federal district courts applying Pennsylvania law also recognize that such claims are generally permissible. Yet, those cases focus in on a particular subset of direct liability claims, namely those asserted alongside admissions of agency and in the absence of viable punitive damages. Accordingly, the federal cases relied upon above are not in conflict with the general permissibility of direct liability claims in Pennsylvania. Thus, the fact that Pennsylvania allows for direct liability claims does not alter the analysis.

## 2. Arguments based on District Court Case Law

Carson next argues that the standard of the federal district courts applying Pennsylvania law is not uniform in requiring dismissal of his direct liability claim. *See id.* at 24. In support, Carson relies on *Calhoun v. Van Loon*, asserting that it stands for the proposition that claims like Carson's may proceed even under the facts above. *See id.* at 25 (citing *Calhoun*, 2014 WL 3428876). *Calhoun* does not provide support for Carson's argument. In fact, *Calhoun* cites to and applies the very rule this Court applies today, noting that federal district courts applying Pennsylvania law "nearly unanimously" dismiss direct liability claims under the circumstances

present here. *See Calhoun*, 2014 WL 3428876, at *4 (citing *Sterner*, 2013 WL 6506591 at *4). Applying this rule, the *Calhoun* court granted summary judgment on plaintiff's direct liability claim because the employer admitted agency over the defendant-employee and the plaintiff had no viable punitive damages claim. *See id.* at *5-6.

> Carson makes much of the court's statement that its ruling would likely be different had the record shown evidence that would support a claim for negligent entrustment, training, hiring, retention, and supervision, based on the actions or omissions of [defendant employer] other than those attributed to it under the doctrine of *respondeat superior* which are also the actions or omissions of [d]efendant [employee] in this case.

*See id.* at *5. Carson would read this statement to mean that, so long as a plaintiff shows evidence of direct liability, that claim should be allowed to proceed regardless of any admission of agency or the viability of any punitive damages claim. Notwithstanding, the context of this quote shows that the court did not intend such a reading. As the court acknowledges in the sentence immediately following that cited by Carson, "[u]nlike *Holben* and *TransAm Trucking*, where the [c]ourts allowed [d]efendants' punitive damages claims to go forward, here, [this court is] . . . granting summary judgment on both punitive damages counts." *See id.* When the two parts are read together, the court is acknowledging that the outcome may have been different had Calhoun provided sufficient evidence to sustain the direct liability claim against the defendant-employer, *provided that such a claim also warranted punitive damages*.[1] *See id.*

---

[1] Carson cites to other case law from the federal courts applying Pennsylvania law. *See* Resp. 24. Those cases are distinguishable and do not warrant a different outcome. *See Burke v. TransAm Trucking, Inc.*, 605 F. Supp. 2d 647, 658-59 (M.D. Pa. 2009) (permitting direct liability claim to proceed where punitive damages claim *survived* summary judgment); *Ogin v. Ahmed*, No. 03:06-cv-350, 2008 WL 11366281, at *4-5 (M.D. Pa. Mar. 10, 2008) (same); *Came v. Micou*, No. 4:04-cv-1207, 2005 WL 1500978, at *5 (M.D. Pa. June 23, 2005) (same); *see also Kiefer v. Reinhart Foodservices, LLC*, Nos. 2:09-cv-1187-JFC & 2:09-cv-1558-JFC, 2012 WL 368047, at *15 (W.D. Pa. Feb. 1, 2012) (relying on *TransAm Trucking*, *supra*, a decision in which punitive damages claim *survived* summary judgment).

This reading is confirmed by subsequent application of the *Calhoun* opinion. In *Holder v. Suarez*, after *denying* summary judgment as to plaintiff's punitive damages claim, the court allowed the direct liability claim to proceed. *See* 3:cv-14-1789, 2016 WL 593620, at *13 (M.D. Pa. Feb. 12, 2016). In doing so, the court applied *Calhoun*, noting that plaintiff's direct liability claim could proceed because (1) plaintiff had presented evidence to hold the defendant-employer liable independent of the defendant-employee *and* (2) plaintiff's punitive damages claim remained viable. *See id.*

Here, there is no doubt that Carson attempted to present evidence to show Western Express's liability independent of Tucker's. Notwithstanding, *Calhoun* and *Holder* indicate that this alone is not enough to sustain Carson's direct liability claim. Rather, Carson must also present a viable claim for punitive damages. *See id.* (permitting direct liability claim to proceed where plaintiff presented evidence of employer's independent liability *and* punitive damages claim survived summary judgment). Accordingly, the district court case law cited by Carson does not support the proposition that Carson's direct liability claim should be permitted to go forward in light of the undisputed facts above.

## VI. CONCLUSION

After review of the undisputed facts and the law applicable thereto, Defendants' partial Motion for Summary Judgment is granted. There is no dispute that Tucker was acting within the scope of his employment with Western Express at the time of the collision. Furthermore, there is no dispute that Carson does not have a viable claim for punitive damages.

Under circumstances identical to these, federal district courts applying Pennsylvania law are nearly unanimous in dismissing direct liability claims asserted against a defendant-employer.

Accordingly, Western Express is entitled to judgment as a matter of law on the direct liability claim in Count III.

A separate Order follows.

                                              BY THE COURT:

                                              */s/ Joseph F. Leeson, Jr.*
                                              JOSEPH F. LEESON, JR.
                                              United States District Judge